[Cite as *State v. Clay*, 2013-Ohio-4649.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

STATE OF OHIO,                           :
                                         :
    Plaintiff-Appellee,              :         Case No. 11CA23
                                         :
    v.                               :
                                         :
DANA K. CLAY,                            : <u>DECISION AND JUDGMENT ENTRY</u>
                                         :
    Defendant-Appellant.             : **RELEASED: 10/09/13**
                                         :
_____

<u>APPEARANCES</u>:

David A. Sams, West Jefferson, Ohio, for Appellant.

Brigham M. Anderson[1], Lawrence County Prosecuting Attorney, and Robert C. Anderson, Lawrence County Assistant Prosecuting Attorney, Ironton, Ohio, for Appellee.
_____

Harsha, J.

{¶1}    Dana K. Clay appeals his convictions for three counts of felonious assault, each with a firearm specification, and the resulting sentence of a fifteen-year prison term.  Clay raises six assignments of error.

{¶2}    First, Clay argues that the prosecutor engaged in misconduct by eliciting speculative testimony from a witness regarding Clay's motive for the crimes.  However, the state presented substantial other evidence to prove Clay's guilt.  Absent the improper questions or remarks, the jury still would have found Clay guilty, and thus, any alleged misconduct did not deprive Clay of a fair trial.

{¶3}    Clay next asserts that the trial court deprived him of his right to

---

[1] Pursuant to Civ.R. 25(D)(1) we have substituted current Prosecuting Attorney Brigham M. Anderson as lead counsel for the Appellee.

present a defense when it prohibited him from introducing testimony that one of the victims routinely carried a gun and had "engaged in unauthorized killings" while in the Army. Because Clay did not raise self-defense, the victim's character had no relevancy to his trial. Thus, the trial court did not abuse its discretion by excluding irrelevant evidence. Likewise, Clay had no constitutional right to present a defense based upon irrelevant evidence.

{¶4} Clay further argues that the trial court plainly erred by failing to give the jury instructions on accident and self-defense. Because the court's general charge instructed the jury regarding the proper mental state of "knowingly," the jury necessarily concluded that Clay did not act accidentally. Thus, the court did not commit plain error by omitting an accident instruction because the omission did not affect the outcome of the trial. Nor did the court commit plain error by failing to give the jury a self-defense instruction. Clay defended the felonious assault charges by claiming that his dog made the weapon accidentally discharge. Clay did not testify that he discharged the weapon in self-defense. Thus, the facts did not warrant a self-defense instruction.

{¶5} Next, Clay contends that his trial counsel's ineffectiveness in failing to object to "the state's assertion of a baseless motive" and in failing to request accident and self-defense instructions deprived him of a fair trial. Even if counsel performed deficiently in any of these respects, the alleged deficiencies did not affect the outcome of the trial. Consequently, any alleged deficiencies did not prejudice Clay's defense, and Clay cannot establish that trial counsel rendered ineffective assistance of counsel.

**{¶6}** Clay further argues that the trial court erred when sentencing him. He contends that the trial court failed to give reasons for imposing more than the minimum term. However, the record reflects that the court imposed only the minimum term of two years for each felonious assault charge. Thus, even if the court was required to state reasons for imposing more than the minimum, this argument is meritless. Clay also asserts that the trial court's decision to impose consecutive sentences is contrary to law. Because the trial court cited appropriate reasons for imposing consecutive sentences, and correctly applied the law, its judgment is not contrary to law. Clay additionally argues that the trial court should have merged the three felonious assault convictions because each conviction arose from a single act. Because the single act, *i.e.*, shooting a weapon, injured three individuals, R.C. 2941.25 authorized the trial court to punish Clay for each felonious assault conviction. However, we *sua sponte* recognize that part of the trial court's judgment is void. Because the indictment did not comply with R.C. 2941.145, that statute did not authorize the court to impose three-year prison terms upon Clay. Without a statutory basis to authorize the three-year prison terms, the court's judgment imposing those terms is void. We therefore vacate that part of the trial court's judgment and remand for resentencing.

**{¶7}** Finally, Clay argues that the cumulative errors deprived him of a fair trial. Because the record fails to show that multiple errors occurred, the cumulative error doctrine is not applicable.

{¶8} Accordingly, we overrule Clay's six assignments of error. We *sua sponte* recognize the court's error in sentencing Clay to three-year prison terms for the firearm specifications, vacate that part of the court's judgment, and remand for resentencing. Therefore, we affirm in part, vacate in part, and remand in part the trial court's judgment.

## I. FACTS

{¶9} Curtis and Sarah Mahan, (husband and wife), along with Michelle Jeter's two-year old child, suffered injuries after Dana Clay discharged his muzzle loader into the front windshield of the Mahans' vehicle. A grand jury subsequently indicted Clay and charged him with three counts of felonious assault, each with a firearm specification.

{¶10} At trial Clay's defense was that he accidentally injured the three victims when his dog tripped him and caused the weapon to discharge. The jury rejected Clay's defense and found him guilty of all three felonious offenses and the accompanying firearm specifications.

{¶11} The trial court sentenced appellant to a total of fifteen years in prison: three years for each firearm specification, to be served consecutively to one another; and two years for each felonious assault conviction, to be served consecutively to one another and consecutively to the firearm specification sentences.

## II. ASSIGNMENTS OF ERROR

{¶12} Appellant raises six assignments of error:

First Assignment of Error:

"Appellant was denied a fair trial by prosecutorial misconduct contrary to the state and federal constitutions."

Second Assignment of Error:

"Appellant was prejudicially denied the right to present a defense contrary to the state and federal constitutions."

Third Assignment of Error:

"The jury instructions were prejudicially insufficient contrary to Ohio law and the state and federal constitutions."

Fourth Assignment of Error:

"Appellant was prejudicially denied the effective assistance of counsel contrary to the state and federal constitutions."

Fifth Assignment of Error:

"Appellant was sentenced contrary to Ohio law and the state and federal constitutions."

Sixth Assignment of Error:

"Appellant was denied due process by cumulative error contrary to Ohio law and the state and federal constitutions."

III.

PROSECUTORIAL MISCONDUCT

{¶13} In his first assignment of error, Clay argues that the prosecutor engaged in misconduct by eliciting speculative testimony from Curtis Mahan concerning Clay's motive. Clay claims that Mahan's speculation undermined Clay's defense of accidental discharge of the gun. Clay specifically asserts that the prosecutor engaged in misconduct through the following line of questioning:

"Q. And did you have, and the Court will instruct the jury that motive doesn't have to be proven in a case but do you, cause we don't know sometimes why people do things, but do you have some belief about why he would shoot into the car?

A.  Jealously [sic]."

**{¶14}**  Clay's counsel objected.  The court overruled his objection, and the

prosecutor continued:

"Q.  So is it your testimony that, that the fact that the bullet was fired into the gun [sic] may have been that you and Sarah were taking the baby and Michelle to Columbus?
A.  That's the only thing I can figure because we've never had a problem."

**{¶15}**  "The test for prosecutorial misconduct is whether the remarks were

improper and, if so, whether they prejudicially affected the accused's substantial

rights."  *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d

1038, ¶226, citing *State v. Smith* (1984), 14 Ohio St.3d 13, 14–15, 14 OBR 317,

470 N.E.2d 883.  "The touchstone of [the] analysis 'is the fairness of the trial, not

the culpability of the prosecutor.'"  *Id.*, quoting *Smith v. Phillips*, 455 U.S. 209,

219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).  Thus, "[t]he conduct of a prosecuting

attorney during trial cannot be grounds for error unless the conduct deprives the

defendant of a fair trial."  *State v. Apanovitch,* 33 Ohio St.3d 19, 24, 514 N.E.2d

394 (1987); *accord State v. Givens,* 4th Dist. No. 07CA19, 2008-Ohio-1202, ¶28.

"In analyzing whether an appellant was deprived of a fair trial, an appellate court

must determine whether, absent the improper questions or remarks, the jury still

would have found the appellant guilty."  *State v. Curry*,  8th Dist. Cuyahoga No.

89075, 2007-Ohio-5721, ¶15, citing *State v. Maurer*, 15 Ohio St.3d 239, 266, 473

N.E.2d 768 (1984); *State v. Dixon*, 8th Dist. Cuyahoga No. 68338 (Mar. 13,

1997).

**{¶16}**  Even if we assume it amounted to improper conduct, the

prosecutor's questioning did not prejudicially affect Clay's substantial rights.

Absent Mahan's testimony regarding Clay's alleged motive, the state presented more than enough evidence to establish the elements of the crime beyond a reasonable doubt and the jury still would have found Clay guilty.

{¶17} To establish felonious assault, the state was required to show, beyond a reasonable doubt, that Clay knowingly caused serious physical harm to another. R.C. 2903.11(A)(1). Clay never challenged whether he caused serious physical harm to another. Instead, he challenged whether he did so knowingly. He claimed that serious physical harm to the victims occurred by accident.

{¶18} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶19} When a defendant raises an accident defense, '"the defendant denies any intent * * *. He denies that he committed an unlawful act and says that the result is accidental."' *State v. Poole*, 33 Ohio St.2d 18, 20, 294 N.E.2d 888 (1973), quoting 4 Ohio Jury Instructions 177, Section 411.01 (1970). "[T]he defense of accident is 'tantamount to a denial that an unlawful act was committed; it is not a justification for the defendant's admitted conduct. * * * Accident is an argument that supports a conclusion that the state has failed to prove the intent element of the crime beyond a reasonable doubt.'" *State v. Atterberry*, 119 Ohio App.3d 443, 447, 695 N.E.2d 789 (1997).

> "An accident is defined as an unfortunate event occurring casually or by chance. *State v. Brady*, 48 Ohio App.3d 41, 42, 548 N.E.2d 278 (1988). Accident is defined as a 'mere physical happening or event, out of the usual order of things and not reasonably (anticipated) (foreseen) as a natural or probable result of a lawful act.' 4 Ohio Jury Instructions 75,

Section 411.01(2).  Moreover, '[a]n accidental result is one that occurs unintentionally and without any design or purpose to bring it about.'  *Id.*"

*State v. Chambers*, 4th Dist. Adams No. 10CA902, 2011-Ohio-4352, ¶ 45.

{¶20}  Here, the record contains ample evidence to show that Clay acted knowingly, even without Mahan's comments regarding Clay's potential motive, and that the shooting was not an accident.  Mahan stated that he observed Clay "cock[ the weapon], raise it and fire through the front windshield of the vehicle." Mahan testified that he believed Clay acted intentionally and explained:  "From my vantage point he turned, raised [the weapon], boom."  A person, such as Clay, who points a weapon towards a vehicle containing three people and discharges the weapon certainly is aware that such conduct will probably cause harm to another.  Mahan's testimony thus allowed the jury to conclude that Clay created the victims' harm knowingly.

{¶21}  Furthermore, the state presented other circumstantial evidence that tended to prove Clay's guilt.  For instance, the state presented evidence that Clay fled after the shooting and avoided apprehension by escaping to West Virginia.  Law enforcement officials did not apprehend Clay until six or seven weeks after the shooting.

{¶22}  One of the investigating deputies testified that the muzzle loader used in the shooting did not have a safety feature but that if the weapon "was loaded and the hammer cocked," the weapon would fire if the trigger was pulled. The deputy explained:  "The trigger has certain amount of poundage or what we call poundage to pull it to activate it to make it fire.  So if you pull that trigger with that amount of pressure, it will make it fire."  The state asked another deputy

whether it would "be pretty hard to accidentally cock [the weapon]." The deputy

responded, "Yes sir," and the following line of questioning ensued:

> "Q.  I mean couldn't could you accidentally cock the weapon?
> A.  I don't see how you could, no I'm * * *
> Q.  Then you have to pull the trigger for it to still fire?
> A.  Yes sir.
> Q.  But you can pull the trigger all day long and if you haven't cocked it, it won't fire?
> A.  No sir."

{¶23}  The prosecutor also questioned the defense witnesses' credibility.

The prosecutor asked Clay's fiancée, Nancy Ross, about the statement she

made to 9-1-1 after the shooting:

> "Q.  I want to give you a chance to clear it up.  This is the narrative, says 'She then put Nancy on the phone who stated that she wasn't sure what set him off.  But that all parties were outside the residence beginning to leave when he fired one shot out of the trailer into the windshield of the car where Sarah Mahan, Curtis, Michelle, and infant Jordan were.'"

{¶24}  The prosecutor asked Ross if her statement was accurate, to which

she replied:

> "A.  Well Curtis said that he shot, he shot the muzzle loader and I know that Dana had a muzzle loader when the woman asked me, I told her that I, he shot a muzzle loader, he shot into a windshield I guess cause that's what Curtis said.  But no I never seen a gun in his hand."

{¶25}  The prosecutor then inquired why the narrative to the 9-1-1

operator did not indicate that Ross had relayed to the operator what Curtis told

her had happened:

> "Q.  This little statement here we're reading from the Dispatcher on the narrative, doesn't say that you said well Curtis told me, that happened, put Nancy on the phone who stated that she wasn't sure what set him off. I'm assum[ing] you're referring to Dana?
> A.  Yea.
> Q.  Did you say that part?

A.  I guess I did.”

**{¶26}** Clay testified in his defense and stated that on the night of the shooting, he and Ross were fighting about rumors Ross had heard that Clay was “doing drugs.”  After he and Ross finished their discussion, Ross walked over to a truck with the intention of going to Wal-Mart.  Clay stated that he thought Mahan waved a gun so Clay went into the house to retrieve his “muzzle loader cause I feared for my life and the life of my family.”  Clay stated that he intended to ask Mahan why he was pointing a gun at him.  Clay explained that before the shooting, he already had filled his muzzle loader and that he simply had to put a percussion cap in it.  Clay testified that when he stepped out the door, “the dog tripped [him].”

**{¶27}** On cross-examination, the prosecutor asked Clay whether he had to cock the weapon before shooting it, and Clay responded “[y]es.”  The prosecutor continued:

“Q.  And it takes some degree of pressure to cock it?
A.  Yes.
Q.  And then if it’s cocked back, then if the triggers [sic] pulled, which it takes some degree of pressure to pull the trigger?
A.  Yea.
Q.  Then it will fire?
A.  Yea.
Q.  So . . .
A.  But if you got your finger on the trigger . . .
Q.  I understand.  That’s what you’re saying.  That a dog hit ya. [sic]  And did you fall to the ground?
A.  No.  He just staggered me around like that.
Q.  And so that triggered a chain reaction of your thumb pulling the trigger or the cocking down and your index finger . . .
A.  And my thumb flied [sic] off of it.  Yea.
Q.  Pulling the trigger?
A.  Yea accidental shooting.

Q. As [o]pposed to some shoot guns [sic], you the automatics, it'd just be the trigger, but here two things has to happen to for [sic] an accidental shooting to happen doesn't it?
A. Yes. But it's still accidental."

**{¶28}** The jury rationally could have determined that Clay's claim that the dog accidentally caused the weapon to discharge was not believable and that Clay was lying. The jury could have rationally decided to reject Clay's testimony in its entirety—including his claim of accident—and conclude that the only logical explanation was that Clay knowingly fired the weapon. Clay's assertion that it was the prosecutor's "improper insinuation" that "undermined" his claim of accident is not persuasive. It is much more likely that Clay's incredible explanation, *i.e.*, that his dog made him do it, "undermined" his claim of accident and caused the jury to reject it.

**{¶29}** Consequently, we conclude absent the questioning about motive, the jury still would have found Clay guilty. Because there was no prejudice to any of Clay's substantial rights, we overrule his first assignment of error.

IV.

RIGHT TO PRESENT A DEFENSE

**{¶30}** In his second assignment of error, Clay asserts that he was denied the right to present a defense. Specifically, he contends that the trial court erred by prohibiting him from presenting evidence regarding Mahan's alleged violent reputation in order to support a self-defense claim. Clay argues that the court should have permitted him to testify regarding Clay's "knowledge that Mahan routinely carried a gun" and his "knowledge that Mahan saw action in the Balkans with the Army and was reputed to have engaged in unauthorized killings."

**{¶31}** At trial, Clay testified, without objection, that he has seen Mahan carry a firearm on "[s]everal different occasions." He further testified that he knew Mahan "was in the Army. Talked about killing kids and stuff in Kosovo." The state objected, and the trial court sustained the objection. Clay asserts that if the court had overruled the state's objection, then the jury would have concluded that Clay's fear of Mahan was justified and that he acted in self-defense.

**{¶32}** "[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986), quoting *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). Although the right to present a defense is a fundamental element of due process of law, the right is not without limits. *Washington v. Texas*, 388 U.S. 14, 19-21, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); *State v. Swann*, 119 Ohio St.3d 552, 2008-Ohio-4837, 895 N.E.2d 821, ¶13. The right has only been applied to "testimony [that] would have been relevant and material, and * * * vital to the defense." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982), quoting *Washington,* 388 U.S. at 16. Moreover, the testimony or evidence must otherwise be admissible under the rules of evidence. *Taylor v. Illinois*, 484 U.S. 400, 411, 108 S.Ct. 646, 98 L.Ed. 2. 798 (1987); *accord State v. Schuler*, 4th Dist. Pickaway No. 02CA7, 2002-Ohio-6607, ¶16. Because the testimony Clay sought to introduce was not relevant, material, and vital to his defense, the trial court did

not deprive Clay of his right to present a defense. Moreover, it was not admissible under the Rules of Evidence.

{¶33} "A trial court has broad discretion in the admission or exclusion of evidence, and so long as such discretion is exercised in line with the rules of procedure and evidence, its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice to defendant." *State v. Green,* 184 Ohio App.3d 406, 2009-Ohio-5199, 921 N.E.2d 276, ¶14 (4th Dist.). The term abuse of discretion means more than an error of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *E.g., State v. Lester,* 4th Dist. Vinton No. 12CA689, ¶6, citing *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). "A review under the abuse-of-discretion standard is a deferential review. It is not sufficient for an appellate court to determine that a trial court abused its discretion simply because the appellate court might not have reached the same conclusion or is, itself, less persuaded by the trial court's reasoning process than by the countervailing arguments." *State v. Morris,* 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶14.

{¶34} Generally, all relevant evidence is admissible. See Evid.R. 402. Evid.R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The trial court must deem relevant evidence inadmissible, however, if the introduction of the evidence violates the United States or the Ohio Constitutions,

an Ohio statute, the Ohio Rules of Evidence, or "other rules prescribed by the

Supreme Court of Ohio."  Evid.R. 402.  Additionally, relevant "evidence is not

admissible if its probative value is substantially outweighed by the danger of

unfair prejudice, of confusion of the issues, or of misleading the jury."  Evid.R.

403(A).

{¶35}  Evid.R. 404, which governs the admission of character evidence,

provides:

> (A) Character evidence generally.  Evidence of a person's
> character or a trait of character is not admissible for the purpose of
> proving action in conformity therewith on a particular occasion, subject to
> the following exceptions:
> * * *
> (2) Character of victim.  Evidence of a pertinent trait of character of
> the victim of the crime offered by an accused, or by the prosecution to
> rebut the same, or evidence of a character trait of peacefulness of the
> victim offered by the prosecution in a homicide case to rebut evidence that
> the victim was the first aggressor is admissible; however, in prosecutions
> for rape, gross sexual imposition, and prostitution, the exceptions provided
> by statute enacted by the General Assembly are applicable.

{¶36}  Evid.R. 405 governs methods of proving character and provides:

> (A) Reputation or opinion
> In all cases in which evidence of character or a trait of character of
> a person is admissible, proof may be made by testimony as to reputation
> or by testimony in the form of an opinion. On cross-examination, inquiry is
> allowable into relevant specific instances of conduct.
> (B) Specific instances of conduct
> In cases in which character or a trait of character of a person is an
> essential element of a charge, claim, or defense, proof may also be made
> of specific instances of his conduct.

{¶37}  Thus, Evid.R. 404(A) generally limits evidence of a person's

character, or certain character traits, subject to certain exceptions.  Accordingly,

Evid.R. 404(A)(2) permits evidence of "a pertinent trait of character of the victim * * * ".

{¶38}  Clay argues that Mahan's character for violence was pertinent to his self-defense theory.  "[A] defendant claiming self-defense concedes he had the purpose to commit the act, but asserts that he was justified in his actions." *State v. Barnd*, 85 Ohio App.3d 254, 260, 619 N.E.2d 518 (3rd Dist. 1993).  "Self-defense is an affirmative defense that, if proved, relieves a defendant of criminal liability for the force that the defendant used."  *State v. Kozlosky,* 195 Ohio App.3d 343, 2011-Ohio-4814, 959 N.E.2d 1097, ¶22 (8th Dist.).

{¶39}  But even if Mahan had a character trait of engaging in "unauthorized killings," this trait fails to be "pertinent" or "relevant" here.  Clay's counsel did not argue that Clay acted in self-defense, and counsel did not request a self-defense instruction.  Instead, Clay's theory at trial was that the shooting was accidental, not done in self-defense.  Clay cannot argue in one breath that he did not intend to shoot anyone and then claim in another that he did.  *Barnd, supra.*  Because Clay's theory at trial did not involve self-defense, Mahan's alleged reputation for violence was not a pertinent character trait.  *State v. Jacobs*, 4th Dist. Highland No. 11CA26, 2013-Ohio-1502, ¶42, (concluding that trial court did not abuse its discretion by excluding testimony regarding victim's alleged "engaging in uprovoked acts of violence" when self-defense not in issue).

{¶40}  The evidence was not relevant, material, and vital to Clay's defense. Consequently, the trial court did not abuse its discretion by sustaining the state's objection to Clay's testimony about Mahan's military experience and

did not deprive Clay of his constitutional right to present a defense.  Accordingly, we overrule Clay's second assignment of error.

V.

JURY INSTRUCTIONS

**{¶41}** In his third assignment of error, Clay argues that the trial court created plain error by failing to give the jury an accident or self-defense instruction.  Under Crim.R. 30(A) "a party may not assign as error the giving or failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection."  When a party fails to properly object, then the party waives all but plain error.  *State v. Conway,* 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶51; *State v. Underwood* (1983), 3 Ohio St.3d 12, 444 N.E.2d 1332, syllabus.

**{¶42}** For a reviewing court to find plain error (1) there must be an error, *i.e.*, "a deviation from a legal rule," (2) the error must be plain, *i.e.*, "an 'obvious' defect in the trial proceedings," and (3) the error must have affected "substantial rights," *i.e.*, it "must have affected the outcome of the trial."  *State v. Barnes,* 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).  Furthermore, the Supreme Court of Ohio has stated that "[n]otice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."  *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus; *accord State v. Gardner,* 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, ¶78.  A reviewing court should

consider noticing plain error only if the error ""seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.""" *Barnes,* 94 Ohio St.3d at 27, quoting *United States v. Olano*, 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936). Here, there is no plain error.

**{¶43}** A trial court has broad discretion to decide how to fashion jury instructions. However, the trial court must "fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus. Additionally, a trial court may not omit a requested instruction, if it is "'a correct, pertinent statement of the law and [is] appropriate to the facts * * *.'" *State v. Lessin*, 67 Ohio St.3d 487, 493, 620 N.E.2d 72 (1993), quoting *State v. Nelson*, 36 Ohio St.2d 79, 303 N.E.2d 865 (1973), paragraph one of the syllabus.

**{¶44}** In general, a trial court errs by failing to provide a jury instruction on the accident defense when the facts of a case warrant such an instruction. *State v. Smiley,* 8th Dist. Cuyahoga No. 03853, 2010–Ohio–4349, ¶16. The facts ordinarily warrant an "accident instruction when there is evidence presented at trial that the party acted lawfully and the result was unintended." *Id.* at ¶13. However,

> "'if the trial court's general charge was otherwise correct, it is doubtful that this error of omission would ever satisfy the tests for plain error or ineffective assistance of counsel.' [*State v. Stubblefield* (Feb. 13, 1991), Hamilton App. No. C–890597], citing *State v. Sims* (1982), 3 Ohio App.3d 331, 335, 445 N.E.2d 245. This is so '"[b]ecause the accident defense is not an excuse or justification for the admitted act," and the effect of such

an instruction "would simply * * * remind the jury that the defendant presented evidence to negate the requisite mental element," such as purpose. In this regard, "[i]f the jury had credited [the defendant's] argument, it would have been required to find [the defendant] not guilty * * * pursuant to the court's general instructions. *State v. Johnson,* Franklin App. No. 06AP–878, 2007–Ohio–2792, ¶63 (internal citations omitted).""'"

*Id.*; *accord State v. Hubbard*, 10th Dist. Franklin No. 11AP-945, 2013-Ohio-2735, ¶61.

**{¶45}** For example, in *Smiley,* the court held that in a felonious assault prosecution trial counsel's failure to request an accident instruction did not prejudice the defendant when the trial court properly instructed the jury regarding the requisite mental state of knowingly. The court reasoned that the knowingly instruction clearly informed the jurors that "knowing conduct * * * goes beyond that considered to be an accident" and that "an accident instruction would not have added anything to the general instructions." *Id.* at ¶19. The court stated that if the jury had believed the defendant's accident claim, then it would have returned a not guilty verdict in accordance with the general instructions that the trial court did provide. *Id.; accord State v. Juntunen,* 10th Dist. Franklin Nos. 09AP–1108 and 09AP–1109, 2010–Ohio–5625, ¶16 (concluding that jury's finding that defendant acted knowingly when he caused physical harm to the victim negated any potential for finding that defendant acted unintentionally or unknowingly in causing such harm so as to warrant an accident instruction); *State v. Johnson,* 10th Dist. Franklin No. 06AP-878, 2007-Ohio-2792, ¶64, (finding no plain error when the defendant was charged with murder, and the trial court instructed the jury that the state bore the burden of proof beyond a reasonable doubt on every element of the offense, including the "purposely"

mental element, and then defined "purposely"); *State v. Martin,* 10th Dist. Franklin No. 07AP–362, 2007-Ohio-7152, ¶ 53 (stating that "accident defense instruction would not have added anything to the general instruction in regards to appellant's reckless homicide charge" when court otherwise properly instructed jury regarding burden of proof and elements of offense, including mental element of reckless).

{¶46} We applied these principles in *State v. Chambers, supra,* and concluded that the trial court did not commit plain error by failing to give the jury an accident instruction. We explained:

> " ***, the trial court properly instructed the jury regarding the applicable mental state, knowingly. By definition, the term "knowingly" means that the defendant's conduct was not an accident. By finding that appellant acted knowingly, the jury necessarily concluded that he was aware of his conduct and thus, that his conduct could not have simply been accidental. Thus, the court's knowingly instruction adequately conveyed to the jury the requisite mental state, and had the jury believed appellant's claimed accident theory at trial, it could not have found that he acted knowingly. We therefore see no danger that the jury wrongly convicted appellant due to the absence of an accident instruction."

Id. at ¶48.

{¶47} Likewise we see no danger here that the jury wrongly convicted Clay due to the absence of an accident instruction. The trial court properly instructed the jury regarding the "knowingly" element. By finding that Clay acted knowingly, the jury necessarily concluded that Clay was aware of his conduct and that his conduct in shooting the weapon was not accidental. Thus, the trial court did not commit plain error by failing to give the jury an accident instruction.

{¶48} Nor did the trial court commit plain error by failing to give the jury a self-defense instruction. "Accident and self-defense are generally 'inconsistent

by definition,' as self-defense presumes intentional, willful use of force to repel force or escape force, while accident is 'exactly the contrary, wholly unintentional and unwillful.'" *State v. Hubbard*, 10th Dist. Franklin No. 11AP-945, 2013-Ohio-2735, ¶59, quoting *Barnd*, 85 Ohio App.3d at 260, quoting *State v. Champion*, 109 Ohio St. 281, 286–87, 142 N.E.2d 141 (1924).  A defendant claiming self-defense "concedes he had the purpose to commit the act, but asserts that he was justified in his actions." *Barnd,* 85 Ohio App.3d at 260.  "Thus, when an individual testifies that they did not intend to cause harm, such testimony prevents the individual from claiming self-defense."  *Hubbard* at ¶54, citing *State v.* Johnson, 10th Dist. Franklin No. 06AP-878, 2007-Ohio-2792, ¶42–43 (where the defendant claimed that "the firearm discharged as a result of a struggle for the firearm and not as a result of appellant's intentional and willful act of discharging the firearm" the defendant's "own testimony * * * belie[d] the application of self-defense to the shooting of [the victim]"), and *State v. Herrington,* 9th Dist. Summit No. 25150, 2010-Ohio-6455, ¶13 (because the defendant testified that "he did not have the intent to shoot or kill during the incident," such testimony "was inconsistent with a claim of self-defense").

{¶49}  Clay's defense was that he accidentally discharged the weapon when his dog tripped him.  We acknowledge that he also claimed he thought Mahan waved a gun at him and stated he grabbed the weapon because he feared for his life.  However, Clay did not testify at trial that he intended to shoot Mahan because he feared for his life.  Rather, he continued to maintain that he did not intend to discharge the weapon and that the dog caused the weapon to

discharge.  He apparently testified that he feared for his life in order to justify his initial conduct of going into the house to retrieve the gun—not to justify his ultimate act of shooting it.  Consequently, the trial court did not commit plain error by failing to give the jury a self-defense instruction.  We overrule Clay's third assignment of error.

VI.

INEFFECTIVE ASSISTANCE OF COUNSEL

**{¶50}**  In his fourth assignment of error, Clay asserts that trial counsel was ineffective for failing to object "to the state's assertion of a baseless motive" and for failing to request the trial court to provide the jury with accident and self-defense instructions.

**{¶51}**  To prevail on an ineffective assistance of counsel claim, the appellant must show (1) counsel's performance was deficient and (2) the deficient performance prejudiced his defense so as to deprive him of a fair trial. *State v. Drummond,* 111 Ohio St.3d 14, 2006–Ohio–5084, 854 N.E.2d 1038, ¶205, citing *Strickland v. Washington,* 466 U . S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  To establish deficient performance, an appellant must show that counsel's performance fell below an objective level of reasonable representation.  *State v. Conway,* 109 Ohio St.3d 412, 2006–Ohio–2815, 848 N.E.2d 810, ¶95.  To establish prejudice, an appellant must show a reasonable probability exists that, but for the alleged errors, the result of the proceeding would have been different.  *Id.*  "A defendant's failure to establish one prong of

the *Strickland* test negates a court's need to consider the other." *State v.*

*Madrigal*,  87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000).

{¶52}  We already determined that evidence regarding Clay's alleged

motive did not affect the outcome of the trial.  Thus, any alleged deficient

performance in failing to object to it did not affect the outcome of the trial.

Consequently, we reject Clay's argument that trial counsel was ineffective in that

regard.

{¶53}  Additionally, we already determined that an accident instruction

would not have affected the outcome of the trial in our plain error discussion.

Thus, Clay cannot show that counsel's alleged deficiency in failing to request an

accident instruction affected the outcome of the trial.

{¶54}  Moreover, trial counsel's decision on whether to request a self-

defense instruction ordinarily is a matter of trial strategy that an appellate court

will not second-guess.  *State v. Carlisle*, 2nd Dist. Montgomery No. 22970, 2009-

Ohio-2004, ¶40 (determining that trial counsel made tactical decision to withdraw

self-defense instruction request and instead proceed with accident theory); *State*

*v. Johnson*, 10th Dist. Franklin No. 08AP-652, 2009-Ohio-3383, ¶62 (concluding

that "trial counsel's decision to forgo self-defense and instead present an

accident defense to the jury was a sound, strategic decision" when defendant's

testimony is inconsistent with self-defense); *State v. Branche*, 10th Dist. Franklin

No. 01AP-523 (Mar. 28, 2002).  In *Branche*, for instance, the court determined

that trial counsel's decision to forgo a self-defense instruction was a matter of

sound trial strategy.  The court explained:

"In the present case, defendant's theory at trial was that the shooting was accidental. Ohio courts have held that the defenses of accident and self-defense are mutually exclusive. *State v. Burns* (Aug. 3, 2000), Cuyahoga App. No. 69676, unreported. In *State v. Barnd* (1993), 85 Ohio App.3d 254, 260, 619 N.E.2d 518, the court noted that the defenses of accident and self-defense are 'inconsistent by definition,' as accident involves 'the denial of a culpable mental state and is tantamount to the defendant not committing an unlawful act,' whereas a defendant claiming self-defense 'concedes he had the purpose to commit the act, but asserts that he was justified in his actions.' Here, while defendant testified that she reached for the gun to hit [the victim], defendant maintained throughout her testimony that the killing was an accident, based upon her claim that the gun inadvertently fired when [the victim] grabbed at her hand. Defendant specifically denied any intent to fire the weapon at [the victim] to protect herself. Thus, even if trial counsel had requested an instruction on self-defense, the trial court could have concluded, under the facts, that such an instruction was not warranted."

**{¶55}** Similarly, Clay continually maintained throughout the trial that he did not intend to shoot any of the victims but that the dog made the weapon accidentally discharge. Trial counsel apparently made a tactical decision to proceed with an accident theory instead of self-defense. Thus, trial counsel's decision not to request a self-defense instruction did not amount to deficient performance. *State v. Shepherd*, 8th Dist. Cuyahoga App. No. 97962, 2012-Ohio-5415, ¶48 (concluding that trial counsel not ineffective for failing to request self-defense instruction when self-defense inconsistent with defendant's theory that he did not shoot victim).

**{¶56}** Furthermore, even if Clay's trial counsel had requested a self-defense instruction, the trial court would have been fully justified in refusing to give the instruction due to Clay's assertion that he had no intent to shoot anyone and that the shooting was an accident. Thus, any alleged deficiency in failing to

request the instruction did not affect the outcome of the trial.  Accordingly, we

overrule Clay's fourth assignment of error.

VII.

SENTENCE

**{¶57}**  In his fifth assignment of error, Clay argues that his sentence is

contrary to law.  In particular, he asserts that the trial court erred by failing to set

forth the reasons for imposing more than the minimum sentence, by imposing

consecutive sentences, and by failing to merge his convictions.

A.

STANDARD OF REVIEW

**{¶58}**  This Court has continued to follow the Ohio Supreme Court's

analysis set forth in *State v. Kalish*, 120 Ohio St.3d 23, 2008–Ohio–4912, 896

N.E.2d 124, when reviewing felony sentences, despite the enactment of H.B. 86,

effective September 30, 2011.[2]  *State v. Black*, 4th Dist. Ross No. 12CA3327,

2013-Ohio-2105, ¶52.  In *Kalish*, a plurality of the court stated:

> "[A]ppellate courts must apply a two-step approach when reviewing
> felony sentences.  First, they must examine the sentencing court's
> compliance with all applicable rules and statutes in imposing the sentence
> to determine whether the sentence is clearly and convincingly contrary to
> law.  If this first prong is satisfied, the trial court's decision in imposing the
> term of imprisonment is reviewed under the abuse-of-discretion standard."

*Kalish* at ¶26.

**{¶59}**  However, the Eighth District has rejected the *Kalish* analysis when

reviewing felony sentences imposed under H.B. 86.  *State v. Brown*, 8th Dist.

---

[2] Neither party disputes that H.B. 86 applied to Clay's sentencing. *State v. Wilson,* 10th Dist. No.
12AP-551, 2013-Ohio-1520, ¶17 (stating that "by operation of R.C. 1.58(B), H.B. 86 applies" to a

Cuyahoga No. 99024, 2013-Ohio-3134, ¶67; *State v. A.H.,* 8th Dist. No. 98622,

2013-Ohio-2525, ¶ 7; *State v. Venes,* 8th Dist. Cuyahoga No. 98682, 2013-Ohio-

1891, 10.  As the *Brown* court explained:

> "This court no longer applies the abuse of discretion standard of *State v. Kalish,* 120 Ohio St.3d 23, 2008–Ohio–4912, 896 N.E.2d 124 * * *, when reviewing a felony sentence.  *State v. A.H.,* 8th Dist. No. 98622, 2613–Ohio–2525, ¶7.  Instead, we follow the standard of review set forth in R.C. 2953.08(G)(2), which provides in relevant part:
>> The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
>> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>>> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>>> (b) That the sentence is otherwise contrary to law.
> A sentence is not clearly and convincingly contrary to law where the trial court considers the purposes and principles of sentencing under R.C. 2929.11 as well as the seriousness and recidivism factors listed in R.C. 2929.12, properly applies postrelease control and sentences a defendant within the permissible statutory range. *A.H.* at ¶ 10, citing *Kalish* at ¶ 18.

*Id.* at ¶¶67-68.

{¶60} Clay does not allege that the trial court abused its discretion but

instead asserts that his sentence is contrary to law.  Therefore, we have no

present need to decide whether to abandon the *Kalish* two-pronged approach in

favor of the review adopted in *Brown.*  Instead, because Clay limits his argument

to whether his sentence is contrary to law, we limit our review likewise.

defendant sentenced after H.B. No. 86's effective date, even if the events giving rise to the

B.

MORE THAN THE MINIMUM

{¶61} We readily reject Clay's argument that the trial court erred by failing to set forth the reasons for imposing more than the minimum sentence for each felonious assault conviction. Contrary to Clay's suggestion that the court imposed more than the minimum sentence, the record shows that the trial court did not do that. Instead, the court imposed the minimum sentence of two years for each conviction. R.C. 2929.14(A)(2). Consequently, even if Clay is correct that a trial court must give reasons for imposing more than the minimum sentence, where the court here imposes only the minimum, that requirement cannot apply.

C.

CONSECUTIVE SENTENCES

{¶62} Clay next asserts that the trial court erred by imposing consecutive sentences and presents "three challenges here to consecutive terms." They are: 1) a general statutory prohibition against consecutive sentences, 2) merger under RC 2941.25, and 3) double jeopardy. However, his argument does not clarify whether he challenges the consecutive sentences that the trial court imposed for the felonious assault convictions, the consecutive sentences that the court imposed for the firearm specifications, or the court's order that he serve the felonious assault sentences consecutively to the firearm specification sentences. He simply states that the court erred by imposing consecutive sentences for

conviction occurred before that date).

"three identical counts * * * predicated on a single gunshot." In an abundance of

caution, we address all three issues.

1.

Felonious Assault Convictions

{¶63} R.C. 2929.14(C)(4), which governs the trial court's imposition of

consecutive sentences reads:

> (4) If multiple prison terms are imposed on an offender for
> convictions of multiple offenses, the court may require the offender to
> serve the prison terms consecutively if the court finds that the consecutive
> service is necessary to protect the public from future crime or to punish
> the offender and that consecutive sentences are not disproportionate to
> the seriousness of the offender's conduct and to the danger the offender
> poses to the public, and if the court also finds any of the following:
> (a) The offender committed one or more of the multiple offenses
> while the offender was awaiting trial or sentencing, was under a sanction
> imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised
> Code, or was under post-release control for a prior offense.
> (b) At least two of the multiple offenses were committed as part of
> one or more courses of conduct, and the harm caused by two or more of
> the multiple offenses so committed was so great or unusual that no single
> prison term for any of the offenses committed as part of any of the courses
> of conduct adequately reflects the seriousness of the offender's conduct.
> (c) The offender's history of criminal conduct demonstrates that
> consecutive sentences are necessary to protect the public from future
> crime by the offender.

{¶64} R.C. 2929.14(C)(4) thus requires that a trial court engage in a

three-step analysis in order to impose consecutive sentences. *State v.*

*Alexander*, 1st Dist. Hamilton Nos. C-110828 and C-10829, 2012-Ohio-3349, ¶15.

The *Alexander* court explained the analysis:

> "First, the trial court must 'find' that consecutive sentencing is
> necessary to protect the public from future crime or to punish the offender.
> Next, the trial court must 'find' that consecutive sentences are not
> disproportionate to the seriousness of the offender's conduct and to the
> danger the offender poses to the public. Finally, the trial court must 'find'

that at least one of the following applies: (1) the offender committed one or more of the multiple offenses while awaiting trial or sentencing, while under a sanction imposed pursuant to R.C. 2929.16, R.C. 2929.17, or R.C. 2929.18, or while under postrelease control for a prior offense; (2) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct; or (3) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

In each step of this analysis, the statutory language directs that the trial court must "find" the relevant sentencing factors before imposing consecutive sentences. R.C. 2929.14(C)(4). A trial court is not required to use "talismanic words to comply with the guidelines and factors for sentencing." *State v. Brewer,* 1st Dist. No. C000148, 2000 Ohio App. LEXIS 5455 *10, 2000 WL 1732335 (Nov. 24, 2000). But it must be clear from the record that the trial court actually made the findings required by statute. *See State v. Pierson,* 1st Dist. No. C–970935, 1998 Ohio App. LEXIS 3812, 1998 WL 515962 (Aug. 21, 1998). A trial court satisfies this statutory requirement when the record reflects that the court has engaged in the required analysis and has selected the appropriate statutory criteria. *See State v. Edmonson,* 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (1999); *see also State v. Brewer,* 1st Dist. No. C–000148, 2000 Ohio App. LEXIS 5455 *11, 2000 WL 1732335 (Nov. 24, 2000)."

Id. at ¶15-16.

**{¶65}** Although the trial court referred to the statute in effect before H.B. 86, it nonetheless cited factors specified under R.C. 2929.14(C)(4). The record shows that the court engaged in an appropriate analysis and cited appropriate statutory criteria, even if it cited the wrong statutory provision. The court stated: "I'm going to find that it's, when it's necessary under 2929.14(E)(3) to protect the publish and punish the offender and that's is not [sic] disproportionate to the conduct and the danger the offender posed and that the harm was so great or unusual that a single term does not adequately reflect the seriousness of the conduct that these must be run consecutively * * *." The court's statement refers

to all three required findings contained in R.C. 2929.14(C)(4), even though the court improperly referenced R.C. 2929.14(E)(3), which the Supreme Court of Ohio's severed from Ohio sentencing scheme in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470.  The court found that (1) consecutive sentencing is necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.  Thus, the court's statement sufficiently fulfills the "finding" requirement under R.C. 2929.14(C)(4).

{¶66}  Clay nevertheless asserts that under R.C. 2929.41(A), a trial court must impose sentences concurrently.  We do not agree.  R.C. 2929.41(A) states:

> Except as provided in division (B) of this section, division (C) of section 2929.14, or division (D) or (E) of section 2971.03 of the Revised Code, a prison term, jail term, or sentence of imprisonment shall be served concurrently with any other prison term, jail term, or sentence of imprisonment imposed by a court of this state, another state, or the United States. * * * *.

{¶67}  The statute clearly creates exceptions to the general rule that a sentence of imprisonment shall be served concurrently with any other term of imprisonment.  Nothing in R.C. 2929.41 prohibits a court from applying one of the exceptions.  One of those exceptions states that a sentence shall be served concurrently except as provided in R.C. 2929.14(C).  *See State v. Bolton*, 8th Dist. Cuyahoga No. 99137, 2013-Ohio-2467, ¶¶10-11 (discussing apparent

typographical error in H.B. 86 version of R.C. 2929.41(A) that referred to R.C. 2929.14(E) instead of 2929.14(C) and noting that legislature corrected the typographical error by amendment effective September 28, 2012).  We discussed R.C. 2929.14(C) above and concluded that the trial court complied with the substantive requirements of that statute to impose consecutive—as opposed to concurrent—sentences. Thus, we reject Clay's argument that R.C. 2929.41 required the trial court to impose concurrent sentences.

2.

FIREARM SPECIFICATIONS

{¶68}  Next, we consider whether the trial court erred by requiring Clay to serve the sentences imposed for the firearm specifications consecutively to one another and consecutively to the sentences imposed for the underlying felonious assault convictions.  In resolving this question, several statutory provisions are relevant to our analysis.

{¶69}  R.C. 2929.14(B)(1)(a)(ii) requires a trial court to impose a three-year prison term upon an offender who is convicted of or pleads guilty to an R.C. 2941.145 firearm specification.  R.C. 2929.14(B)(1)(b) precludes a trial court from imposing "more than one prison term on an offender [for a firearm specification] for felonies committed as part of the same act or transaction," unless R.C. 2929.14(B)(1)(g) authorizes it.  *State v. Ayers*, 12th Dist. Warren No. CA2011-11-123, 2013-Ohio-2641, ¶22; *State v. Sheffey*, 8th Dist. Cuyahoga No. 98944, 2013-Ohio-2463, ¶27.

{¶70}  R.C. 2929.14(B)(1)(g) states:

> If an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies are aggravated murder, murder, attempted aggravated murder, attempted murder, aggravated robbery, felonious assault, or rape, and if the offender is convicted of or pleads guilty to a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications.

{¶71} In *State v. Isreal*, 12th Dist. Warren No. CA2011-11-15, 2012-Ohio-4876, ¶73, the court recognized that R.C. 2929.14(B)(1)(g) creates an exception to the general rule prohibiting multiple punishments for firearm specifications arising out of a single transaction. The court explained:

> "[R.C. 2929.14(B)(1)(g)] carve[s] out an exception to the general rule that a trial court may not impose multiple firearm specifications for crimes committed within a single transaction. The mandatory language of the statute ("the court shall impose") also indicates the General Assembly's intention that the defendant serve multiple sentences for firearm specifications associated with the enumerated crimes, such as murder or felonious assault. Had the Legislature intended a *per se* rule that sentences for firearm specifications must be served concurrent with one another, it could have stated as much. Or, the Legislature could have chosen not to codify R.C. 2929.14(B)(1)(g), which serves as an exception to the rule that multiple firearm specifications must be merged for purposes of sentencing when the predicate offenses were committed as a single criminal transaction."

{¶72} Clay was convicted of two or more felonies that are specified in R.C. 2929.14(B)(1)(g): felonious assault. Additionally, Clay was convicted of a firearm specification as described in R.C. 2929.14(B)(1)(a) in connection with two or more of those felonies. Thus, according to R.C. 2929.14(B)(1)(g), the court was required to impose on Clay mandatory prison terms as described in

2929.14(B)(1)(a) for the two most serious specifications of which Clay was conviction, even if the crimes resulted from a single transaction. *Israel, supra*; *accord Ayers* at ¶24; *Sheffey* at 28; *State v. Vanderhorst*, 8th Dist. Cuyahoga No. 97242, 2013-Ohio-1785, ¶¶10-11. The statute also allowed the court to exercise its discretion to impose any remaining firearm specification prison terms, which it did. Consequently, the trial court did not err by requiring Clay to serve the firearm specification prison terms consecutively to one another.

{¶73} We further reject any argument that the trial court erred by requiring Clay to serve the firearm specification prison terms consecutively to the felonious assault prison terms. R.C. 2929.14(C)(1)(a) plainly requires an offender to serve a mandatory prison term imposed for a firearm specification "consecutively to any other mandatory prison term imposed [for a firearm specification] * * * [and] consecutively and prior to any prison term imposed for the underlying felony." That is exactly what the court did in this case.

{¶74} Having determined that the trial court did not err by requiring Clay to serve the firearm specification prison terms consecutively to one another and consecutively to Clay's felonious assault prison terms, we now *sua sponte* consider whether the trial court erred by imposing three-year prison terms for the firearm specifications. Normally, we would only consider issues that were raised on appeal; nonetheless, we have discretion to *sua sponte* notice plain error. *State v. Durr*, 4th Dist. Scioto No. 11CA3411, 2012-Ohio-4691, ¶26 (*sua sponte* recognizing plain error when trial court incorrectly stated that portion of offender's sentence was mandatory); *State v. Lee*, 4th Dist. Pickaway No. 10CA12, 2010-

Ohio-6450, ¶19, quoting *State v. Slagle*, 65 Ohio St.3d 597, 604, 605 N.E.2d 916

(1992) (observing that Crim.R. 52 "allows the appellate court, at the request of

appellate counsel or *sua sponte,* to consider a trial error that was not objected to

when that error was a 'plain error'").

**{¶75}** As we already stated, for a reviewing court to find plain error (1)

there must be an error, *i.e.*, "a deviation from a legal rule," (2) the error must be

plain, *i.e.*, "an 'obvious' defect in the trial proceedings," and (3) the error must

have affected "substantial rights," *i.e.*, it "must have affected the outcome of the

trial." *Barnes,* 94 Ohio St.3d at 27. In this case, all three circumstances exist and

justify our decision to recognize plain error.

**{¶76}** The Supreme Court of Ohio has declared, "[j]udges have no

inherent power to create sentences * * * [and lack] the authority to impose a

sentence that is contrary to law." *State v. Fischer,* 128 Ohio St.3d 92, 2010-

Ohio-6238, 942 N.E.2d 332, ¶¶22–23. A sentence that is not authorized by law

is void. *See Fischer* at ¶21-24 and *State v. Billiter*, 134 Ohio St.3d 103, 2012-

Ohio-5144, 980 N.E.2d 960, ¶10. "'The effect of determining that a judgment is

void is well established. It is as though such proceedings had never occurred;

the judgment is a mere nullity and the parties are in the same position as if there

had been no judgment.'" *State v. Bezak,* 114 Ohio St.3d 94, 2007-Ohio-3250,

868 N.E.2d 961, ¶12, quoting *Romito v. Maxwell,* 10 Ohio St.2d 266, 267–268,

227 N.E.2d 223 (1967).[3] An appellate court has inherent authority to vacate a

---

[3] *Fischer* modified *Bezak* on other grounds. *Fischer* at ¶28.

void judgment and remand for resentencing. *State v. Pritchett*, 2nd Dist. Montgomery No. 24183, 2011-Ohio-5978, ¶29.

{¶77} The firearm specification found in R.C. 2941.145 prohibits a trial court from imposing the mandatory three-year prison term "unless the indictment * * * charging the offense specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."

{¶78} Here, the trial court imposed a mandatory three-year prison term pursuant to R.C. 2941.145. However, neither the indictment nor the verdict forms contained the latter part of R.C. 2941.145, *i.e.*, "and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." Instead, the indictment and the verdict forms contained only the first part of the statute, *i.e.*, "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense." Thus, the indictment did not comply with R.C. 2941.145, and, consequently, the trial court could not impose the three-year mandatory prison term.

{¶79} R.C. 2941.141 appears to be the firearm specification that the trial court should have applied in this case. R.C. 2941.141 authorizes a trial court to impose a mandatory one-year prison term if "the indictment * * * charging the offense specifies that the offender had a firearm on or about the offender's

person or under the offender's control while committing the offense."  The indictment here complied with R.C. 2941.141.

{¶80}  We recognize the sentencing error as plain error because all three requirements for application of the doctrine exist.  There is an error:  the trial court did not sentence Clay in accordance with R.C. 2941.145 because the indictment did not contain the appropriate language.  This error is obvious:  the language in the indictment plainly does not contain all of the language that R.C. 2941.145 requires in order for the trial court to impose a mandatory three-year prison term for a firearm specification.  The error affected the outcome of the proceedings:  the indictment did not sufficiently charge a firearm specification that carries a mandatory three-year prison term but only sufficiently charged a firearm specification that carries a mandatory one-year prison term.  The error resulted in Clay receiving three-year—as opposed to a one-year—mandatory prison terms for the firearm specifications.  Because the indictment failed to contain the language specified in R.C. 2941.145, the statute did not authorize the trial court to sentence Clay to mandatory three-year prison terms for the firearm specifications.  Clay's three-year mandatory prison terms are not authorized by law and are therefore void.

{¶81}  Accordingly, we vacate the trial court's judgment sentencing Clay to mandatory three-year prison terms for the firearm specifications.  We remand that portion of the trial court's judgment for re-sentencing in accordance with this opinion.

D. MERGER

**{¶82}** Clay next argues that the trial court violated double jeopardy

principles by imposing multiple punishments.  He contends that because the

three criminal offenses resulted from the same conduct, then the court could

impose only one punishment.

**{¶83}** R.C. 2941.25 "codifies the protections of the Double Jeopardy

Clause of the Fifth Amendment to the United States Constitution and Section 10,

Article I of the Ohio Constitution, which prohibit[ ] multiple punishments for the

same offense."  *State v. Underwood,* 124 Ohio St.3d 365, 2010-Ohio-1, 922

N.E.2d 923, ¶23.  The statute states:

> (A) Where the same conduct by defendant can be construed to
> constitute two or more allied offenses of similar import, the indictment or
> information may contain counts for all such offenses, but the defendant
> may be convicted of only one.
> (B) Where the defendant's conduct constitutes two or more
> offenses of dissimilar import, or where his conduct results in two or more
> offenses of the same or similar kind committed separately or with a
> separate animus as to each, the indictment or information may contain
> counts for all such offenses, and the defendant may be convicted of all of
> them.

"The question of whether offenses should merge under R.C. 2941.25 ordinarily

presents a question of law we review de novo."  *State v. Delawder*, 4th Dist.

Scioto App. No. 10CA3344, 2012-Ohio-1923, ¶38.  In *State v. Nguyen,* 4th Dist.

Athens No. 12CA14, 2013-Ohio-3170, ¶103, we set forth the analysis that

applies when determining if offenses should merge under R.C. 2941.25:

> "'Through a series of opinions the Supreme Court of Ohio has
> advised and re-advised lower courts on the difficult task of applying Ohio's
> multiple-count statute to determine which criminal convictions require
> merger.' *Delawder* at ¶39.  In the plurality decision of *State v. Johnson,*
> 128 Ohio St.3d 153, 2010–Ohio–6314, 942 N.E.2d 1061, the Court
> expressly overruled its then current test for merger.  Under the new test,
> the trial court must first determine 'whether it is possible to commit one

offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other.' (Emphasis sic). *Johnson* at ¶48. If the offenses are so alike that the same conduct can subject the accused to potential culpability for both, they are 'of similar import' and the court must proceed to the second step. The court must then determine whether the offenses in fact were committed by the same conduct, *i.e.*, committed as a single act with a single animus. *Id.* at ¶49. If so, merger is necessary. However, if the offenses resulted from separate acts or were performed with a separate animus, or if the commission of one offense will never result in the commission of the other, the offenses will not merge. *Id.* at ¶ 51."

**{¶84}** Clay's three felonious assault charges stemmed from the same gunshot, but each charge involved a different victim. Ohio courts have routinely recognized that separate convictions and sentences are permitted when the same course of conduct affects multiple victims. *State v. Franklin,* 97 Ohio St.3d 1, 2002–Ohio–5304, 776 N.E.2d 26, ¶48 (finding the court could impose multiple punishments for aggravated arson as defendant "caused six offenses of dissimilar import because six different people were placed at risk" when defendant set one structure on fire); *State v. Jones*, 18 Ohio St.3d 116, 480 N.E.2d 408 (1985) (determining that defendant could be sentenced for two convictions of aggravated vehicular homicide, even though the convictions arose out of the same conduct, when the conduct resulted in the death of two individuals); *State v. Crisp,* 4th Dist. Scioto No. 10CA3404, 2012-Ohio-1730, ¶36 (finding that "[i]n situations where a defendant has knowledge that more than one victim could be harmed, courts have concluded there is a separate animus for each victim at risk"). Thus, "multiple sentences for a single act committed against multiple victims is permissible where the offense is defined in terms of conduct toward 'another as such offenses are of dissimilar import; the import

being each person affected.'" *State v. Tapscott,* 7th Dist. Mahoning No. 11MA26, 2012-Ohio-4213, ¶41, quoting *Jones,* 18 Ohio St.3d at 118; *accord State v. Angus,* 10th Dist. No. 05AP–1054, 2006-Ohio-4455, 2006 WL 2474512, ¶ 34 ("Where a defendant's conduct injures multiple victims, the defendant may be convicted and sentenced for each offense involving a separate victim.").

**{¶85}** Because Clay's three felonious assault convictions involved three different victims, the imposition of multiple punishments does not offend double jeopardy principles or R.C.2941.25. The offenses are of dissimilar import because each offense involved a different victim. Consequently, the trial court did not err by failing to merge the convictions.

**{¶86}** Accordingly, we overrule Clay's fifth assignment of error but *sua sponte* vacate the trial court's judgment imposing mandatory three-year prison terms for the firearm specifications and remand for resentencing on that issue.

F.  CUMULATIVE ERROR

**{¶87}** In his sixth assignment of error, appellant contends that the cumulative nature of the errors deprived him of a fair trial.

**{¶88}** "Before we consider whether 'cumulative errors' are present, we must first find that the trial court committed multiple errors." *State v. Harrington,* 4th Dist. Scioto No. 05CA3038, 2006-Ohio-4388, ¶57, citing *State v. Goff,* 82 Ohio St.3d 123, 140, 694 N.E.2d 916 (1998). Because we have found that the trial court did not commit multiple errors, the cumulative error principle is inapplicable. *State v. Wharton*, 4th Dist. Ross No. 09CA3132, 2010-Ohio-4775, ¶46. Accordingly, we overrule Clay's sixth assignment of error.

## VIII. CONCLUSION

{¶89}  We affirm the trial court's judgment, except that we vacate the

portion of its judgment that imposed mandatory three-year prison terms for the

firearm specifications and remand for re-sentencing on that issue.

JUDGMENT AFFIRMED IN PART,
VACATED IN PART,
AND CAUSE REMANDED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED IN PART, VACATED IN PART and that the CAUSE IS REMANDED.  Appellant and Appellee shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, P.J. & Abele, J.:  Concur in Judgment and Opinion.

For the Court

BY: _____
William H. Harsha, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**